# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | | |
|---|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | ) ) ) | |
| Plaintiff, | ) ) | JUDGE JAMES GWIN |
| v. | ) ) | CASE NO. 23-CV-1853 |
| MATTHEW M. MOTIL, NORTH SHORE EQUITY SALES, LLC, d/b/a THE MARIE PAUL COMPANY, NORTH SHORE EQUITY MANAGEMENT, LLC, | ) ) ) ) ) ) ) | |
| Defendants, | ) ) | |
| AMY DOUBRAVA MOTIL, | ) ) | |
| Relief Defendant. | ) | |

**DEFENDANTS' UNOPPOSED MOTION FOR A LIMITED STAY PENDING RESOLUTION OF RELATED CRIMINAL PROCEEDINGS**

## INTRODUCTION

Defendants Matthew M. Motil ("Mr. Motil"), North Shore Equity Sales, LLC d/b/a The Marie Paul Company ("MPC") and North Shore Equity Management, LLC ("North Shore Management") move this Court for a brief stay as to all Defendants, pending resolution of a related and parallel federal criminal investigation into the allegations set forth in the SEC's Complaint (ECF No. 1) and any judicial proceedings resulting therefrom.

To protect Mr. Motil's Fifth Amendment right against self-incrimination in connection with the anticipated criminal charges referenced above, a brief stay as to the Defendants' testimony as well as all document production is necessary.

Because the alleged conduct giving rise to both this civil case and the anticipated criminal charges is the exact same, Mr. Motil's right against self-incrimination would be violated (or significantly curtailed) if he must choose between exercising that right, on the one hand, or responding substantively to the SEC's Complaint, discovery requests, and testifying at trial or in a deposition, on the other. Any information Mr. Motil provides or testimony he gives during this case could—and in fact almost certainly would—be used against Mr. Motil in the criminal matter. Moreover, unlike in a criminal case where a presumption of guilt is prohibited if a defendant asserts his Fifth Amendment right, in a civil matter, an adverse inference against the asserting party is permitted.

Thus, unless a stay is granted, Mr. Motil must choose between two dire options—assert his Fifth Amendment right in the civil matter and face an adverse inference on nearly every material issue in the Complaint, or waive his constitutional right against self-incrimination, respond herein, and severely prejudice himself in the criminal case. For this reason, the Court should grant a brief stay in this case pending resolution of the parallel criminal investigation and any judicial

proceedings resulting therefrom. Neither the SEC nor the Government opposes this requested relief.

## I. BACKGROUND

### A. The Complaint

The SEC filed its Complaint commencing this case on September 25, 2023. (ECF No. 1.) The Complaint alleges that Mr. Motil, through the operations of his companies, told investors he could earn them substantial returns by investing their money in "short-term, low-risk and high-return promissory notes supposedly fully collateralized by first mortgages on residential real estate located throughout Ohio." (*Id.* ¶ 1.) The SEC claims Mr. Motil's representations were false because "many" of the notes he offered were not fully collateralized by first mortgages and, in fact, most of the properties had several mortgages issued to numerous investors. (*Id.*) Ultimately, the SEC alleges that Mr. Motil, operating through his companies, raised over $11 million from more than 60 investors across the United States. (*Id.* ¶ 3.) According to the SEC, Mr. Motil also misappropriated funds by using invested money for unrelated business ventures and personal expenses. (*Id.* ¶ 2.)

### B. The Criminal Investigation

At the same time, the U.S. Attorney's Office for the Northern District of Ohio, with the United States Secret Service and IRS-Criminal Investigations, has been investigating Mr. Motil's conduct as alleged in the Complaint herein. Over a year ago, the Government informed Mr. Motil (and his counsel at the time) that he was the target of their criminal investigation. More recently, the Government expressly stated to defense counsel that, absent a negotiated plea resolution, charges are expected as soon as early next year. The Government has told defense counsel that the criminal investigation is focused on the same conduct alleged in the SEC Complaint. The

Government has expressly confirmed to undersigned counsel that it does not oppose a brief stay in this civil matter.

## II.   ARGUMENT

### A.   This Case Should be Stayed Briefly Pending Resolution of the Criminal Investigation and Any Judicial Proceedings Resulting Therefrom.

The Court should issue a brief stay, at least through the end of 2023, to permit Mr. Motil and the Government time to negotiate a resolution in the criminal matter. From there, Mr. Motil would return to the Court to provide a status update and either 1) request to extend the stay pending any criminal charges that are brought or imminently expected, or 2) inform the Court the stay is no longer necessary because the criminal investigation has been resolved, and the SEC matter can move forward without potential prejudice to Mr. Motil's Fifth Amendment rights.

Issuing a stay will serve to protect Mr. Motil's constitutional rights. "District Courts have the inherit authority to manage their dockets and courtrooms with a view toward the efficient and expedient resolution of cases." *Dietz v. Bouldin*, 579 U.S. 40, 47 (2016). Within that authority is the "broad discretion in determining whether to stay a civil action while a criminal action is pending." *F.T.C. v. E.M.A. Nationwide, Inc.*, 767 F.3d 611, 627 (6th Cir. 2014). In considering the propriety of a stay in a given case, district courts in the Sixth Circuit consider the following factors:

> (1) the extent to which the issues in the criminal case overlap with those presented in the civil case; (2) the status of the case, including whether the defendants have been indicted; (3) the private interests of the plaintiff in proceeding expeditiously weighed against the prejudice to the plaintiffs caused by the delay; (4) the private interests of and the burden on the defendants; (5) the interests of the courts; and (6) the public interests . . . additionally, courts consider the extent to which the defendant's fifth amendment rights are implicated.

*Id.* Here, each of these factors weigh heavily in favor of a temporary stay as to Mr. Motil and his companies.

4

      **i.**  **The Subject Matter in the Criminal Case Directly Overlaps with that in this Case.**

  In analyzing the first factor, a court will consider the "similarities between the legal issues and subject matter such as the charges, fact issues, witnesses and evidence." *S.E.C. v. Bongiorno*, 594 F.Supp.3d 938, 943 (N.D. Ohio 2022). If there is no overlap, there is no threat of self-incrimination and thus, no need for a stay. *Id.*

  Here, the conduct giving rise to the civil charges in the SEC's Complaint is nearly identical—if not the same—to those under investigation in the criminal matter. In both matters, Mr. Motil is accused of misleading his investors by inducing them to invest in real estate, promising a secure first position mortgage on the property. Moreover, the fact issues, evidence, and witnesses in both matters will be extremely similar if not identical. For example, both the SEC and the Government will seek to prove that Mr. Motil misled over sixty investors of millions of dollars by leading the investors to believe their investments in real estate were secured by a first position mortgage. (ECF No. 1). To do that, both the SEC and the Government will rely heavily on documentation such as bank statements, e-mail correspondence, social media posts, and mortgage documents to support their case. As for witnesses, they will be the same in both cases, as both the SEC and the Government consider most (or all of) the investors to be victims.

  In short, the alleged conduct in the SEC civil matter and the federal grand jury criminal matter overlap in their entirety. This civil matter in no way extends beyond the criminal case as in *Bongiorno*. Thus, this factor weighs decidedly in favor of a stay.

      **ii.**  **The Government has Explicitly Stated that Charges Will Be Filed Imminently.**

  Second, as to the status of the case, it is true that courts "do not stay proceedings in the absence of an indictment." *E.M.A. Nationwide*, 767 F.3d at 628. Once a civil defendant has been indicted, however, a stay is appropriate because "(1) 'the likelihood that a defendant may make

5

incriminating statement is greatest after an indictment has issued; and (2) the prejudice to the plaintiffs in the civil case is reduced since the criminal case will likely be quickly resolved due to Speedy Trial Act consideration.'" *Bongiorno*, 594 F.Supp.3d at 943-44.

However, in *Bongiorno*, the court held that this factor could weigh in favor of a stay—***even without an indictment filed***—because although Mr. Bongiorno was only listed as an "unindicted co-conspirator in the criminal matter," the United States made clear that it intended to pursue criminal charges against the defendant. *Id.* at 944.

So too here. As in *Bongiorno*, although Mr. Motil has not yet been indicted in the criminal matter, the Government stated in writing to Mr. Motil's prior defense counsel—and explicitly reaffirmed to undersigned counsel—absent a decision by Mr. Motil on a plea resolution by the end the year, the Government intends to bring charges early next year. Thus, without a stay, it is more than likely that when criminal charges are brought against Mr. Motil, he will also be litigating this case, including responding to discovery requests issued by the SEC. For all these reasons, this factor also weighs heavily in favor of a stay.

    **iii. The SEC's Interests will not be Materially Harmed by a Stay, and Neither the SEC nor the Government Oppose this Requested Relief.**

Third, the court must consider "the private interests of the plaintiffs in proceeding expeditiously weighed against the prejudice to plaintiffs caused by the delay." *Id.* Here, the Government plans to bring charges by early next year, a little more than three months after the SEC filed its Complaint, and only a month and a half after a response to the Complaint must be filed. Therefore, there is no reason to believe that a brief stay, like the one Defendants are requesting here, would harm the SEC's ability to resolve this case in a reasonable time period.

Also, a temporary stay in this proceeding is not likely to have a material negative impact on the SEC's ability to prevent any dissipation of assets. Mr. Motil is no longer involved in the

business of seeking real estate investors to purchase and rehab homes; he has already initiated personal bankruptcy proceedings; and significantly, all his business assets have been placed in state court receivership. *In re Matthew M. Motil*, case no. 22-10571 (Bankr. N.D. Ohio); *Rhen v. INVCLE150, LLC, et al.*, case no. CV-21-947601 (Cuyahoga County, Ohio Court of Common Pleas). In fact, if anything, there is a strong argument that granting a stay could benefit the SEC. If Mr. Motil is given time to resolve the anticipated criminal charges, there is a much higher likelihood that the overlapping facts results in a non-trial settlement with the SEC as well. Finally, both the SEC and the Government have reviewed a draft of this filing, and both the SEC and the Government confirmed to undersigned counsel that they do not oppose this brief motion to stay the proceedings.

    **iv. Analysis of Mr. Motil's Interests Clearly Illustrate the Necessity of a Stay.**

Fourth, Mr. Motil's interests weigh heavily in favor of staying this case. Those interests are two-fold: first, to protect his Fifth Amendment right against self-incrimination and second, to avoid overburdening him by requiring him to spend the considerable time and depleting his limited resources defending himself in two cases simultaneously, and thereby prejudicing his creditors by reducing his ability to implement restitution. In *Bongiorno*, the court stated that "[w]hen examining the private interests and burden of the [d]efendants, it should come as no surprise that defending multiple actions simultaneously imposes substantial burdens on [d]efendants that might induce them to resolve one or both cases for reasons having little to do with the merits." *Id.* at 945. The court also noted that "a stay would 'eliminate the risk that [the defendant's] Fifth Amendment privilege against self-incrimination might be undermined, that criminal discovery might be expanded beyond the limits of Rule 16(b), and that either side might otherwise be prejudiced in

7

advance of the criminal trial.'" *Id.* (citing *S.E.C. v. Abdallah*, 313 F.R.D. 59, 64-5 (N.D. Ohio 2016)).

Mr. Motil's constitutional right against self-incrimination and his ability to defend the impending criminal charges would be severely curtailed if this case were permitted to proceed. Without a stay, Mr. Motil has two choices, invoke his Fifth Amendment right or defend himself in the civil matter, both of which result in prejudice against him. The *Bongiorno* court noted that although these factors do not amount to unconstitutional coercion, the fact that the defendant "will face difficult choices about how to mount defenses in each," militates in favor of a stay. *Id.* In fact, this factor weighs in favor of Mr. Motil more heavily here because Mr. Motil presently requests only a *temporary* and *brief* stay, not an open-ended and indefinite stay like the defendant requested in *Bongiorno*.

### v. The Interests of the Court and the Public Weigh in Favor of a Stay.

Finally, factors five and six also weigh in favor of a stay because it would promote efficient management of the Court's docket and judicial economy, as well as the public's interest in the fair administration of criminal justice. A court shall consider its "'docket management and the expeditious resolution of cases' when determining whether a stay is appropriate." *Id.* at 944. In determining the public's interest, "if the interests of the Court and the public do not overlap, the 'public interest in effective criminal prosecution generally outweighs any existing civil interests.'" *Id.* at 945.

Both the court and public can benefit from a stay because Mr. Motil's resolution of the parallel criminal case "as a result of a plea or following a trial can contribute significantly to the narrowing of issues in dispute in the overlapping civil case and promote settlement of civil litigation." *Abdallah*, 313 F.R.D. at 65. Moreover, as outlined by the *Abdallah* court, in this case, a stay is likely to serve all the parties' interests by potentially leading to the expeditious conclusion

of both cases. Mr. Motil will be able to assist in his own defense without threatening his Fifth Amendment rights while the SEC could streamline its discovery process with the Government's assistance. This would reduce the burden on this Court to resolve potential discovery disputes. Therefore, factors five and six weigh in favor of the Defendants.

> vi. **The Stay Should Apply to All Named Defendants and to Both Depositions and Document Discovery.**

The Court should grant this brief stay as to all aspects of discovery with respect to Mr. Motil and the other Defendants—including his business entities, MPC and North Shore Management, as well as the Relief Defendant, Amy Motil. While a business entity does not have the same constitutional right against self-incrimination as an individual, a stay should be granted to an entity where, as here, that document production may infringe on the Fifth Amendment right of an individual associated with the entity. *See, e.g., Taylor, Bean & Whitaker Mortg. Corp. v. Triduanum Fin., Inc.*, No. 2:09-CV-954, 2009 WL 2136986, at *3 (E.D. Cal. July 15, 2009) (granting stay with respect to both business entity and individuals associated with it where "the Fifth Amendment rights of every director or officer who may speak on behalf of [the entity] are implicated").

Here, Mr. Motil is the managing member of both MPC and North Shore Management. He is also the main—if not the only—individual who may speak on behalf of the companies regarding material matters. As such, his Fifth Amendment right will almost certainly be threatened by any production by, or deposition related to, MPC or North Shore Equity. Correspondingly, if Mr. Motil were to invoke his right, MPC and North Shore Equity would be prejudiced if relevant documents or testimony to their defense are prohibited. *See, e.g., American Express Bus. Fin. Corp v. RW Prof'l Leasing Serv. Corp.*, 225 F. Supp. 2d 263, 265-66 (E.D.N.Y. 2003) (granting stay to individual and entity defendants where entity defendant would be unable to mount a defense given

9

the unavailability of the individual defendants, both of whom were executive officers of the entity); *Bruner Corp. v. Balogh*, 819 F. Supp. 811, 816 (E.D. Wis. 1993) (finding that "it is not likely" that the entity defendant "could proceed to trial without meaningful discovery from" the individual defendant alleged to be part of the RICO enterprise), *rev'd in part on other grounds*, 133 F.3d 491 (7th Cir. 1998). Therefore, because any party's ability to defend itself is threatened by the failure to extend the stay to all, granting a stay to both Mr. Motil and his companies is appropriate here.

The stay should also apply to the Relief Defendant, Amy Motil. Mrs. Motil is likely to assert defenses based on her lack of involvement in Mr. Motil's companies as well as her lack of knowledge of any alleged wrongdoing. It would be unwieldy and unfair to permit or order the SEC to move forward piecemeal against Mrs. Motil (but not the other Defendants) because by permitting a stay as to only Mr. Motil or his companies, she is prevented from seeking discovery that could assist in her own defense.

Additionally, the temporary stay should apply not only to depositions but to document discovery and filing an answer to the Complaint. In *United States v. Hubbell*, 530 U.S. 27, 44 (2000), the Supreme Court concluded that the defendant's production of documents "had a testimonial aspect" and thus that Fifth Amendment protections applied to document production. Essentially, by producing and authenticating requested documents, a party is effectively "testifying" that those documents exist and thus implicates one's Fifth Amendment right against self-incrimination. *Id.* at 44-45. Finally, the concerns discussed above regarding the Defendants' ability to adequately defend themselves in this case applies with just as much force to document production as testimony. Therefore, for the stay to obtain its goal in effectuating a fair administration of justice, it must extend to all Defendants and all forms of evidence—textual and testimonial.

### III. CONCLUSION

For all these reasons, Mr. Motil asks the Court to briefly stay this action because of an ongoing criminal investigation into the same conduct by the U.S. Attorney's Office for the Northern District of Ohio. Mr. Motil asks that the stay run at least through the end of 2023 to permit the Government to make charging decisions affecting Mr. Motil. Mr. Motil suggests that the parties file a status report on or before January 5, 2024, informing the Court of the status of the criminal investigation, and, to the extent any Defendant seeks an extension of the stay, articulating the specific basis for that relief.

Respectfully submitted,

*/s/ Paul M. Flannery*
Paul M. Flannery (OH: 0091480)
Olivia S. Gipson (OH: 0101178)
**FLANNERY | GEORGALIS LLC**
One Cleveland Center
1375 E. 9th Street, Floor 30
Cleveland, Ohio 44114
(216) 367-2094 (Flannery)
(216) 232-3195 (Gipson)
paul@flannerygeorgalis.com
ogipson@flannerygeorgalis.com

*/s/ Benjamin Reese*
Benjamin Reese (OH: 0096180)
**FLANNERY | GEORGALIS LLC**
175 South Third Street, Ste. 1060
Columbus, Ohio 43215
(216) 230-9041
breese@flannerygeorgalis.com

*Attorneys for Defendants Matthew Motil, North Shore Equity Sales, LLC, and North Shore Equity Management, LLC*

11

**CERTIFICATE OF SERVICE**

I hereby certify that on November 15, 2023, a copy of the foregoing was filed electronically. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. All other parties will be served by regular U.S. Mail. Parties may access this filing through the Court's system.

/s/ Paul M. Flannery
Paul M. Flannery

*Attorney for Defendant Matthew Motil, North Shore Equity Sales, LLC, and North Shore Equity Management, LLC*