DRAFT – PURSUANT TO FRE 408

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | |
| Plaintiff, | |
| v. | No. 1:23-cv-1853 (JZ) |
| MATTHEW M. MOTIL, et al., | |
| Defendants. | |

## CONSENT OF DEFENDANT MATTHEW M. MOTIL

1.      Defendant Matthew M. Motil ("Defendant") acknowledges having been served with the complaint in this action, enters a general appearance, and admits the Court's jurisdiction over Defendant and over the subject matter of this action.

2.      Defendant has pleaded guilty to criminal conduct relating to certain matters alleged in the complaint in this action. Specifically, in *United States v. Matthew Motil*, Crim. No. 24-cr-289 (N.D. Ohio), Defendant pleaded guilty to violations of Section 10(b) of the Securities Exchange Act of 1934 and Rule 10b-5 thereunder [15 U.S.C. § 78j(b); 17 C.F.R. § 240.10b-5] and 18 U.S.C. § 1343. In connection with that plea, Defendant admitted the facts set out in the plea agreement that is attached as Exhibit A to this Consent. This Consent shall remain in full force and effect regardless of the existence or outcome of any further proceedings in *United States v. Motil*.

3.      Defendant hereby consents to the entry of the final Judgment in the form attached hereto (the "Final Judgment") and incorporated by reference herein, which, among other things:

(a)      permanently restrains and enjoins Defendant from violation of Sections

1

DRAFT – PURSUANT TO FRE 408

5(a) and 5(c) of the Securities Act of 1933 (the "Securities Act") [15 U.S.C. §§ 77e(a) and 77e(c)];

(b)    permanently restrains and enjoins Defendant from violation of Section 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act") [15 U.S.C. § 78j(b)] and Rule 10b-5 promulgated thereunder [17 C.F.R. § 240.10b-5] and Section 17(a) of the Securities Act [15 U.S.C. § 77q(a)] by, directly or indirectly, (i) creating a false appearance or otherwise deceiving any person, or (ii) disseminating false or misleading documents, materials, or information or making, either orally or in writing, any false or misleading statement in any communication with any investor or prospective investor, about:

(A) any investment in or offering of securities;

(B) the prospects for success of any product or company;

(C) the use of investor funds;

(D) compensation to any person; or

(E) the misappropriation of investor funds or investment proceeds;

(c)    permanently restrains and enjoins Defendant from directly or indirectly, including, but not limited to, through any entity owned or controlled by Defendant, participating in the issuance, purchase, offer, or sale of any security; provided, however, that such injunction shall not prevent him from purchasing or selling securities listed on a national securities exchange for his own personal account; and

(d)    orders Defendant to pay disgorgement in the amount of $2,969,535, along

2

DRAFT – PURSUANT TO FRE 408

with prejudgment interest in the amount of $340,625.19, and deems

Defendant's obligation to make this payment satisfied by the entry of the

restitution order in the related criminal case, *United States v. Motil*, Crim

No. 24-cr-289.

4.      Defendant waives the entry of findings of fact and conclusions of law pursuant to

Rule 52 of the Federal Rules of Civil Procedure.

5.      Defendant waives the right, if any, to a jury trial and to appeal from the entry of

the Final Judgment.

6.      Defendant enters into this Consent voluntarily and represents that no threats,

offers, promises, or inducements of any kind have been made by the Commission or any

member, officer, employee, agent, or representative of the Commission to induce Defendant to

enter into this Consent.

7.      Defendant agrees that this Consent shall be incorporated into the Final Judgment

with the same force and effect as if fully set forth therein.

8.      Defendant will not oppose the enforcement of the Final Judgment on the ground,

if any exists, that it fails to comply with Rule 65(d) of the Federal Rules of Civil Procedure, and

hereby waives any objection based thereon.

9.      Defendant waives service of the Final Judgment and agrees that entry of the Final

Judgment by the Court and filing with the Clerk of the Court will constitute notice to Defendant

of its terms and conditions.  Defendant further agrees to provide counsel for the Commission,

within thirty days after the Final Judgment is filed with the Clerk of the Court, with an affidavit

or declaration stating that Defendant has received and read a copy of the Final Judgment.

10.     Consistent with 17 C.F.R. 202.5(f), this Consent resolves only the claims asserted

3

against Defendant in this civil proceeding. Defendant acknowledges that no promise or

representation has been made by the Commission or any member, officer, employee, agent, or

representative of the Commission with regard to any criminal liability that may have arisen or

may arise from the facts underlying this action or immunity from any such criminal liability.

Defendant waives any claim of Double Jeopardy based upon the settlement of this proceeding,

including the imposition of any remedy or civil penalty herein. Defendant further acknowledges

that the Court's entry of a permanent injunction may have collateral consequences under federal

or state law and the rules and regulations of self-regulatory organizations, licensing boards, and

other regulatory organizations. Such collateral consequences include, but are not limited to, a

statutory disqualification with respect to membership or participation in, or association with a

member of, a self-regulatory organization. This statutory disqualification has consequences that

are separate from any sanction imposed in an administrative proceeding. In addition, in any

disciplinary proceeding before the Commission based on the entry of the injunction in this

action, Defendant understands that he shall not be permitted to contest the factual allegations of

the complaint in this action.

      11.     Defendant understands and agrees to comply with the terms of 17 C.F.R.

§ 202.5(e), which provides in part that it is the Commission's policy "not to permit a defendant

or respondent to consent to a judgment or order that imposes a sanction while denying the

allegations in the complaint or order for proceedings." As part of Defendant's agreement to

comply with the terms of Section 202.5(e), Defendant acknowledges the guilty plea for related

conduct described in paragraph 1 above, and: (i) will not take any action or make or permit to be

made any public statement denying, directly or indirectly, any allegation in the complaint or

creating the impression that the complaint is without factual basis; (ii) will not make or permit to

DRAFT – PURSUANT TO FRE 408

be made any public statement to the effect that Defendant does not admit the allegations of the complaint, or that this Consent contains no admission of the allegations; (iii) upon the filing of this Consent, Defendant hereby withdraws any papers filed in this action to the extent that they deny any allegation in the complaint; and (iv) stipulates solely for purposes of exceptions to discharge set forth in Section 523 of the Bankruptcy Code, 11 U.S.C. §523, that the allegations in the complaint are true, and further, that any debt for disgorgement, prejudgment interest, civil penalty or other amounts due by Defendant under the Final Judgment or any other judgment, order, consent order, decree or settlement agreement entered in connection with this proceeding, is a debt for the violation by Defendant of the federal securities laws or any regulation or order issued under such laws, as set forth in Section 523(a)(19) of the Bankruptcy Code, 11 U.S.C. §523(a)(19). If Defendant breaches this agreement, the Commission may petition the Court to vacate the Final Judgment and restore this action to its active docket. Nothing in this paragraph affects Defendant's: (i) testimonial obligations; or (ii) right to take legal or factual positions in litigation or other legal proceedings in which the Commission is not a party.

12.     Defendant hereby waives any rights under the Equal Access to Justice Act, the Small Business Regulatory Enforcement Fairness Act of 1996, or any other provision of law to seek from the United States, or any agency, or any official of the United States acting in his or her official capacity, directly or indirectly, reimbursement of attorney's fees or other fees, expenses, or costs expended by Defendant to defend against this action. For these purposes, Defendant agrees that Defendant is not the prevailing party in this action since the parties have reached a good faith settlement.

13.     Defendant agrees that the Commission may present the Final Judgment to the Court for signature and entry without further notice.

5

DRAFT – PURSUANT TO FRE 408

14.     Defendant agrees that this Court shall retain jurisdiction over this matter for the purpose of enforcing the terms of the Final Judgment.

Dated: _8/22/25_

Matthew M. Motil

On _August 22_, 2025, _____, a person known to me, personally appeared before me and acknowledged executing the foregoing Consent.

John M. Haky Sr

Notary Public
Commission expires: 10/26/2029

Approved as to form:

_____
[Defense attorney's name, address, and telephone number]
Attorney for Defendant

Paul Flannery
1621 Euclid Ave, Floor 20
Cleveland, OH 44115
(216) 702-4463 (Mobile)

# EXHIBIT A

**FILED**

SEP 0 5 2024

CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF OHIO
CLEVELAND

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) CASE NO.: *1:24 CR 289* |
| | ) |
| Plaintiff, | ) JUDGE: *Judge Donald Nugent* |
| | ) |
| v. | ) |
| | ) |
| MATTHEW MOTIL, | ) PLEA AGREEMENT |
| | ) |
| Defendant. | ) |

Pursuant to Rule 11(c)(1)(A) and (B) of the Federal Rules of Criminal Procedure, and in

consideration of the mutual promises set forth below, the United States Attorney's Office for the

Northern District of Ohio (hereinafter "USAO"), by and through its undersigned attorney, and

the defendant, MATTHEW MOTIL (hereinafter "Defendant"), agree as follows:

## MAXIMUM PENALTIES AND OTHER
## CONSEQUENCES OF PLEADING GUILTY

1.      **Waiver of an Indictment.** Defendant understands that Defendant has been

accused of one or more offenses punishable by imprisonment for more than one year. Defendant

has been advised of Defendant's rights and the nature of the proposed charges against Defendant,

including the following: Defendant has a constitutional right to be charged by an indictment of a

grand jury, but can waive that right and consent to being charged by information of the United

States Attorney; Defendant may not be charged with a felony unless a grand jury finds by return

of an indictment that there is probable cause to believe that Defendant committed each crime

charged; a grand jury is composed of at least sixteen and not more than twenty-three persons,

and at least twelve grand jurors must find that there is probable cause to believe Defendant

*Defendant's Initials* MM

committed the crime with which Defendant is charged before Defendant may be indicted; and if Defendant waives indictment by the grand jury, the case will proceed against Defendant on the United States Attorney's information just as though Defendant had been indicted. After receiving that advice, Defendant waives Defendant's right to prosecution by indictment and consents to prosecution by information.

2. **Waiver of Constitutional Trial Rights.** Defendant understands that Defendant has the right to plead not guilty and go to trial. At trial, Defendant would be presumed innocent, have the right to trial by jury or, with the consent of the United States, to trial by the Court, the right to the assistance of counsel, the right to confront and cross-examine adverse witnesses and subpoena witnesses to testify for the defense, the right to testify and present evidence, and the right to be protected from compelled self-incrimination. Defendant understands that Defendant has the right to an attorney at every stage of the proceedings and, if necessary, one will be appointed to represent Defendant. Defendant understands that by pleading guilty, Defendant specifically and voluntarily waives each of these trial rights, except the right to counsel. Defendant understands that a guilty plea is a complete admission of guilt and if the Court accepts the guilty plea, the Court will find Defendant guilty without a trial.

3. **Statutory Penalties.** Defendant understands that the statutory maximum penalties, and minimum penalties if applicable, for the counts to which Defendant agrees to plead guilty are as follows:

| Count | Statute and Description of Offense | Statutory Sentence Per Count |
|-------|-----------------------------------|------------------------------|
| 1 | 15 U.S.C. §§ 78j(b) and 78ff(a), and 17 C.F.R. § 240.10b-5: Securities Fraud | Maximum imprisonment: 20 years |
| | | Maximum Statutory fine: $5,000,000 |
| | | Maximum alternative fine: twice the gross pecuniary gain or gross pecuniary loss |
| | | Maximum period of supervised release: 3 years |

*Defendant's Initials* MM

|   |   | Special assessment: $100 |
|---|---|---|
| 2 | 18 U.S.C. § 1343: Wire Fraud | Maximum imprisonment: 20 years |
|   |   | Maximum Statutory fine: $250,000.00 |
|   |   | Maximum alternative fine: twice the gross pecuniary gain or gross pecuniary loss |
|   |   | Maximum period of supervised release: 3 years |
|   |   | Special assessment: $100 |

4.　**Special Assessment.**  As set forth above, Defendant will be required to pay a mandatory special assessment of $100 for each count of conviction, for a total of $200, due immediately upon sentencing.

5.　**Costs.**  The Court may order Defendant to pay the costs of prosecution and sentence, including but not limited to imprisonment, community confinement, home detention, probation, and supervised release.

6.　**Restitution.**  The Court may order Defendant to pay restitution as a condition of the sentence, probation, and/or supervised release.

7.　**Violation of Probation/Supervised Release.**  If Defendant violates any term or condition of probation or supervised release, such violation could result in a period of incarceration or other additional penalty as imposed by the Court. In some circumstances, the combined term of imprisonment under the initial sentence and additional period of incarceration could exceed the maximum statutory term.

8.　**Immigration Consequences.**  Defendant understands that a convicted person who is not a United States citizen may be removed from the United States, denied citizenship and denied admission to the United States in the future.

*Defendant's Initials* MM

## PLEA

9.    **Agreement to Plead Guilty.** Defendant agrees to plead guilty to the Information in this case.

10.    **Agreement Not to Bring Certain Other Charges.** The USAO will not bring any other criminal charges against Defendant for violations known to the USAO on the date of the execution of this agreement as it relates to this investigation.

## ELEMENTS OF THE OFFENSES

11.    The elements of the offenses to which Defendant will plead guilty are:

| Title 15 U.S.C. § 78j(b): Securities Fraud |
| --- |
| 1: Defendant knowingly (i) employed any device, scheme, or artifice to defraud; (ii) made any untrue statement of a material fact, or omitted to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; or (iii) engaged in any act, practice, or course of business which operated or would operate as a fraud or deceit on any person; |
| 2: Defendant did so in connection with the purchase or sale of the securities; |
| 3: In connection with this purchase or sale, Defendant made use of or caused the use of any means or instrumentality of interstate commerce, or of the mails, or of any facility of any national securities exchange; and |
| 4: Defendant acted willfully, with the intent to defraud. |

| Title 18 U.S.C. § 1343: Wire Fraud |
| --- |
| 1: Defendant knowingly participated in or devised or intended to devise a scheme to defraud in order to obtain money or property as charged; |
| 2: The scheme to defraud included a material misrepresentation or concealment of a material fact; |
| 3: Defendant had the intent to defraud; and |
| 4: In advancing, or furthering, or carrying out this scheme to defraud in order to obtain money or property, Defendant transmitted, or caused the transmission of, any writing, signal, or sound by means of a wire, radio, or television communication in interstate commerce. |

## SENTENCING STIPULATIONS AND AGREEMENTS

12.    **Sentencing Guidelines.** Defendant understands that sentencing rests within the discretion of the Court; that federal sentencing law requires the Court to impose a sentence which is sufficient, but not greater than necessary, to comply with the purposes of 18 U.S.C.

*Defendant's Initials* MM

§ 3553(a), and that the Court must consider among other factors the advisory United States Sentencing Guidelines in effect at the time of sentencing and that in determining the sentence, the Court may depart or vary from the advisory guideline range.

13. **Presentence Report.** Defendant understands that the advisory guideline range will be determined by the Court at the time of sentencing, after a presentence report has been prepared by the U.S. Probation Office and reviewed by the parties. Defendant further understands that the USAO may provide to the U.S. Probation Office all known information regarding Defendant's conduct subject to its limited use under U.S.S.G. § 1B1.8 and except as protected under the proffer agreement if any.

14. **No Agreement about Sentence or Sentencing Range.** The parties have no agreement about the sentencing range to be used or sentence to be imposed in this case, other than to stipulate to the computation of the advisory Sentencing Guidelines offense level. Each party is free to recommend whatever sentence it believes to be appropriate.

15. **Sentencing Recommendations Not Binding on the Court.** Defendant understands that the recommendations of the parties will not be binding upon the Court, that the Court alone will decide the advisory guideline range under the Sentencing Guidelines, whether there is any basis to depart from that range or impose a sentence outside the advisory guideline range, and what sentence to impose. Defendant further understands that once the Court has accepted Defendant's guilty plea, Defendant will not have the right to withdraw such a plea if the Court does not accept any sentencing recommendations made on Defendant's behalf or if Defendant is otherwise dissatisfied with the sentence.

*Defendant's Initials* MM

16. **Allocution.** Defendant understands and agrees that the USAO reserves the opportunity to speak at Defendant's sentencing. The USAO agrees that Defendant reserves the right of allocution at sentencing.

17. **Guidelines Offense Level Computations**. The parties agree that U.S.S.G. § 2B1.1, using the current advisory Sentencing Guidelines Manual, should be used to calculate Defendant's offense level for all charges, and that, under U.S.S.G. § 2B1.1(a)(1), the base offense level is 7. The parties have no agreement about whether, and, if so, to what extent, certain specific offense characteristics and other Guideline adjustments apply (collectively, the "Disputed Adjustments"). The parties agree that these Disputed Adjustments are the following:

| Disputed Adjustment Description | Potential Effect | U.S.S.G. Section |
|---|---|---|
| Actual or Intended Loss Amount | Wide Range | § 2B1.1(b)(1) |
| Number of victims, and number of victims suffering substantial financial hardship | + 2, 4 or 6 | § 2B1.1(b)(2) |
| Abuse of position of trust or use of special skill | + 2 | § 3B1.3 |
| Zero-point offender | - 2 | § 4C1.1 |

The parties agree that each side is free to argue for or against any Disputed Adjustment under the applicable Sentencing Guidelines provisions and relevant application notes. Defendant agrees that the Court's decision regarding each Disputed Adjustment shall be final, and treated as part of "the sentencing stipulations and computations in this agreement" in the following section ("Waiver of Appeal and Post-Conviction Attack"). Unless otherwise agreed to below, the parties also agree that no other specific offense characteristics, Guideline adjustments or Guideline departures apply.

18. **Acceptance of Responsibility.** The USAO has no reason to believe at this time that Defendant has not clearly and affirmatively accepted personal responsibility for Defendant's criminal conduct. The USAO agrees to recommend a three (3) level reduction for acceptance of

*Defendant's Initials* MM

responsibility under U.S.S.G. § 3E1.1(a) and (b), provided Defendant's conduct continues to reflect Defendant's acceptance of responsibility. Defendant understands it will be up to the Court at the time of sentencing to determine whether a reduction for acceptance of responsibility is appropriate.

19. **Criminal History Category.** The parties have no agreement about the Criminal History Category applicable in this case. Defendant understands that the Criminal History Category will be determined by the Court after the completion of a Pre-Sentence Investigation by the U.S. Probation Office.

## WAIVER OF APPEAL AND POST-CONVICTION ATTACK

20. Defendant acknowledges having been advised by counsel of Defendant's rights, in limited circumstances, to appeal the conviction or sentence in this case, including the appeal right conferred by 18 U.S.C. § 3742, and to challenge the conviction or sentence collaterally through a post-conviction proceeding, including a proceeding under 28 U.S.C. § 2255. Defendant expressly and voluntarily waives those rights, except as specifically reserved below. Defendant reserves the right to appeal: (a) any punishment in excess of the statutory maximum; or (b) any sentence to the extent it exceeds the maximum of the sentencing imprisonment range determined under the advisory Sentencing Guidelines in accordance with the sentencing stipulations and computations in this agreement, using the Criminal History Category found applicable by the Court. Nothing in this paragraph shall act as a bar to Defendant perfecting any legal remedies Defendant may otherwise have on appeal or collateral attack with respect to claims of ineffective assistance of counsel or prosecutorial misconduct.

## WAIVER OF STATUTE OF LIMITATIONS

21. Defendant waives all defenses based on the statute of limitations with respect to any prosecution that is not already time-barred by the applicable statute of limitation on the date

*Defendant's Initials* MM

of Defendant's signing of this agreement and that is commenced within one year after any of the following events: (1) Defendant fails to plead guilty at the plea proceeding or the Court refuses to accept a guilty plea by Defendant pursuant to this agreement; (2) the Court permits Defendant to withdraw a guilty plea entered pursuant to this agreement or otherwise vacates such a guilty plea; or (3) the conviction obtained pursuant to this agreement is vacated, overturned, or otherwise set aside. Defendant understands the waiver of the statute of limitations is effective immediately upon Defendant's signing of this agreement and is not conditioned upon the approval of this agreement by the Court.

## FACTUAL BASIS AND RELEVANT CONDUCT

22.    Defendant agrees that the summary set forth in Attachment A (incorporated herein by reference) fairly and accurately sets forth Defendant's offense conduct and a factual basis for the guilty plea. Defendant further agrees that the facts set forth in Attachment A are true and could be established beyond a reasonable doubt if the case were to proceed to trial.

23.    Defendant acknowledges that the summary of Defendant's conduct in Attachment A does not set forth each and every fact that the USAO could prove at trial, nor does it encompass all of the acts which Defendant committed in furtherance of the offense to which Defendant is pleading guilty.

## RESTITUTION

24.    **Restitution.** Defendant agrees to make full restitution as ordered by the Court pursuant to 18 U.S.C. § 3663(a)(3) and 3663A, payable immediately on such terms and conditions as the Court may impose, for the losses caused by Defendant's relevant conduct in this case, as defined under Guideline § 1B1.3. Defendant understands that pursuant to 18 U.S.C. § 3664, the Court shall order the U.S. Probation Office to prepare a report containing information sufficient for the Court to fashion a restitution order. In preparing that report, the U.S. Probation

*Defendant's Initials* MM

Office may solicit the views of the USAO, Defendant, and any victim. Defendant understands that victims have the right to present their position on restitution directly to the Court at the time of sentencing.

25.     Defendant understands that the Court will determine whether, and in what amount, restitution applies in this case under 18 U.S.C. § 3663 and 18 U.S.C. § 3663A. Defendant agrees this may include restitution for all losses caused by the Defendant's criminal conduct, even if such losses resulted from crimes not charged or admitted by Defendant in the Factual Basis. Defendant waives any defense or objection to any action to enforce the collection of financial obligations to be imposed in connection with this prosecution, including, but not limited to, collection procedures authorized by the Federal Debt Collection Procedures Act, 28 U.S.C. § 3001, *et seq.*, 18 U.S.C. § 3664, or 18 U.S.C. § 3613.

26.     Defendant understands and agrees that, pursuant to 18 U.S.C. § 3613, whatever monetary penalties or restitution are imposed by the Court will be due and payable immediately and subject to immediate enforcement by the United States. If the Court imposes a schedule of payments, Defendant agrees that it is a minimum schedule of payments and not the only method, nor a limitation on the methods, available to the United States to enforce the judgment. The Defendant waives any requirement for demand of payment on any fine, restitution, or assessment imposed by the Court and agrees that any unpaid obligations will be submitted to the United States Treasury for offset.

**OTHER PROVISIONS**

27.     **Financial Statement.** Defendant agrees fully to disclose all assets in which Defendant has any interest or over which the Defendant exercises control, directly or indirectly, including those held by a spouse, nominee or third party, and disclosing any transfer of assets that has taken place within three years preceding the entry of this plea agreement. Defendant

*Defendant's Initials* MM

agrees to truthfully complete the Financial Statement of Debtor Form provided by the USAO, sign it under penalty of perjury, and provide it and the required documents and attachments to the USAO within 30 days of Defendant's change-of-plea hearing. Defendant agrees to provide updates with any material changes in circumstances, as described in 18 U.S.C. § 3664(k), which occur prior to sentencing, within seven days of the event giving rise to the changed circumstances or two calendar days before sentencing, whichever occurs first.

28. Defendant expressly authorizes the USAO to obtain Defendant's credit report. Defendant agrees to provide waivers, consents or releases requested by the USAO to access records to verify the financial information, such releases to be valid for a period extending 90 days from the date of sentencing. Defendant also authorizes the USAO to inspect and copy all financial documents and information held by the U.S. Probation Office.

29. **The Parties are Free to Advise the Court about Matters Not Expressly Addressed.** This agreement is silent about all aspects of the determination of sentence not expressly addressed herein, and the parties are free to advise the Court of facts and to make recommendations to the Court with respect to all aspects of sentencing not agreed to herein.

30. **Consequences of Breaching the Plea Agreement.** Defendant understands that if Defendant breaches any promise in this agreement, commits additional crimes, obstructs justice, attempts to withdraw Defendant's guilty plea, or if Defendant's guilty plea is rejected by the Court or is vacated or set aside, the USAO will be released from all of its obligations under this agreement and may institute or maintain any charges and make any recommendations with respect to sentencing that otherwise would be prohibited under the terms of the agreement. Defendant understands, however, that a breach of the agreement by Defendant will not entitle Defendant to withdraw, vacate, or set aside Defendant's guilty plea or conviction.

*Defendant's Initials* MM

31. **Agreement not Binding on other Jurisdictions and Agencies.** Defendant understands that this plea agreement is binding only on the United States Attorney's Office for the Northern District of Ohio. It does not bind any other United States Attorney, any other federal agency, or any state or local government.

32. **Defendant is Satisfied with Assistance of Counsel.** Defendant makes the following truthful statements: I have discussed this case and this plea agreement in detail with my attorney who has advised me of my Constitutional and other trial and appeal rights, the nature of the charges, the elements of the offenses the United States would have to prove at trial, the evidence the United States would present at such trial, possible defenses, the advisory Sentencing Guidelines and other aspects of sentencing, potential losses of civil rights and privileges, and other potential consequences of pleading guilty in this case. I have had sufficient time and opportunity to discuss all aspects of the case in detail with my attorney and have told my attorney everything I know about the charges, any defenses I may have to the charges, and all personal and financial circumstances in possible mitigation of sentence. I am satisfied with the legal services and advice provided to me by my attorney.

33. **Agreement Is Complete and Voluntarily Entered.** Defendant and Defendant's undersigned attorney state that this agreement, including any addendums discussed in open court and on the record at the time of the change of plea (if any), is the entire agreement between Defendant and the USAO and that no other promises or inducements have been made, directly or indirectly, by any agent or representative of the United States government concerning any plea to be entered in this case. In particular, no promises or agreements have been made with respect to any actual or prospective civil or administrative proceedings or actions involving Defendant, except as expressly stated herein. In addition, Defendant states that no person has threatened or

*Defendant's Initials* MM

coerced Defendant to do or to refrain from doing anything in connection with this case, including Defendant's decision to enter a guilty plea. Finally, Defendant acknowledges that this agreement cannot be modified unless in writing and subject to approval by the Court.

*Defendant's Initials* MM

Plea Agreement of Matthew Motil – page 13 of 26

## SIGNATURES

**Defendant:** I have read (or have had read to me) this entire plea agreement and have discussed it with my attorney. I have initialed each page of the agreement to signify that I understand and approve the provisions on that page. I am entering this agreement voluntarily and of my own free will. No threats have been made to me, nor am I under the influence of anything that could impair my ability to understand this agreement.

_____     _____8/6/24_____
Matthew Motil                                         Date
Defendant


**Defense Counsel:** I have read this plea agreement and concur in Defendant pleading in accordance with terms of the agreement. I have explained this plea agreement to Defendant, and to the best of my knowledge and belief, Defendant understands the agreement.

_____     _____9/5/24_____
Paul Flannery, Esq.                                  Date
Counsel for Defendant


**United States Attorney's Office:** I accept and agree to this plea agreement on behalf of the United States Attorney for the Northern District of Ohio.

_____     _____9/5/24_____
Erica D. Barnhill (OH: 0079309)               Date
Assistant United States Attorney
United States Court House
801 West Superior Avenue, Suite 400
Cleveland, OH 44113
(216) 622-3967
(216) 522-2403 (facsimile)
Erica.Barnhill@usdoj.gov


APPROVED:

_____     __September 5, 2024__
United States District Judge                     Date


*Defendant's Initials* **MM**

## ATTACHMENT A

### Background

1.　Defendant MATTHEW MOTIL was a resident of the Northern District of Ohio, Eastern Division.

2.　Defendant held a realtor's license from the State of Ohio and worked as a licensed real estate agent in the State of Ohio.

3.　Defendant was the incorporator and sole member of multiple companies in the State of Ohio that he formed to purchase and manage real estate, including but not limited to the following: NS Equity Cleveland, LLC; North Shore Equity Sales, LLC; North Shore Equity Management, LLC; BUYCLE100, LLC; BUYCLE112, LLC; BUYCLE114, LLC; BUYCLE158, LLC; BUYCLE175, LLC; BUYCLE176, LLC; INVCLE150, LLC; NSEM Mansfield 1, LLC; and NSEM Mansfield 2, LLC (collectively "the Motil Real Estate Companies").

4.　Defendant was also the owner and president of Gym 1 and Gym 2, physical fitness facilities located in or around Twinsburg, Ohio, and Cleveland, Ohio, both in the Northern District of Ohio, Eastern Division.

5.　Defendant controlled bank accounts in the names of several of the Motil Real Estate Companies, Gym 1, and Gym 2 at Bank 1, a federally insured financial institution headquartered in New York, New York.

6.　Individuals who invested in the Motil Real Estate Companies ("the Investors") resided in jurisdictions throughout the United States, including in the Northern District of Ohio.

7.　A "security" was a tradable financial asset. One form of a security was a promissory note issued for investment purposes.

*Defendant's Initials* MM

8.      Defendant used the email address matt@mariepaul.com to communicate with the Investors. The email address was hosted by Internet Company 1, an email provider whose servers were located in the State of California.

### The Scheme to Defraud

9.      From in or around October 2017 to on or about March 7, 2022, Defendant devised and executed a scheme to defraud Investors and obtain their money, and unlawfully enrich himself, by inducing Investors to invest in the Motil Real Estate Companies through promissory notes based on material misrepresentations.

### Manner and Means of the Scheme to Defraud

10.     The manner and means by which Defendant carried out the scheme included, but were not limited to, the following:

        a.      Defendant promoted his claimed expertise in investing in real estate among potential investors to establish their trust in him and in his ability to teach them to profitably invest their money in the real estate market, including through a book he authored, a podcast he produced and hosted, social media posts he made, and websites he controlled, promoting himself as the "Cash Flow King":

                i.      Defendant was the author of a book, Man on Fire, which depicted Defendant's background leading to his successful career in real estate investing. The "about the author" section touted Defendant's claimed expertise at real estate investing.

                ii.     Defendant produced and hosted a podcast called "Cash Flow King," in which he promoted real estate investing as a means of making passive income.

*Defendant's Initials* **MM**

iii. Defendant made numerous social media posts about his success in real estate investing.

iv. Defendant also maintained the websites "mariepaul.com" and "drmattmotil.com" that promoted Defendant's claimed experience in real estate investing. For example, Defendant represented that he had "worked with hundreds of investors from all over the world and helped them to grow massive wealth and passive income through remote real estate investments."

b. Defendant also used his book, podcast, social media posts, and websites to advertise to and solicit prospective investors to invest in real estate as a business enterprise to passively generate profit, and to invest their money with him and the Motil Real Estate Companies. His website, for example, included sections such as the following: "Free Guide: Out Of State Investing," "Getting Started In Real Estate," and "Start Investing In Real Estate Now." It also provided a link to sign up for Defendant's newsletter. Defendant's social media posts advertised passive investment secured by mortgages with favorable rates of return.

c. Once a prospective investor expressed interest, either by reaching out to Defendant directly or signing up for his email newsletter, Defendant would email them with "investment opportunities" for various properties, which were either controlled by one or more of the Motil Real Estate Companies or represented to Investors to be available for purchase by the Motil Real Estate Companies.

d. Defendant represented to Investors that he would use investment money to rehab houses that Defendant controlled through one or more of the Motil Real Estate Companies

*Defendant's Initials* **MM**

or to purchase additional properties. Defendant represented that the updated properties would then either be rented out, refinanced with a bank, or sold at a significant profit.

      e.      From in or around 2017 through in or around 2019, Defendant and the Motil Real Estate Companies purchased approximately 85 separate properties.

      f.      Defendant induced Investors to invest with false statements promising high and consistent returns on the investment. Defendant used promissory notes, a type of security, to memorialize the investment. Defendant's promissory notes generally guaranteed between 8% and 15% rates of return.

      g.      Defendant induced Investors to invest by misleading Investors regarding the safety and security of their investments. Defendant promised that their investment would be memorialized in a promissory note and secured by a mortgage on the property, and which mortgages Defendant promised or otherwise led Investors to reasonably believe he would record with appropriate government offices. Nearly all mortgages contained covenants affirming the Investors' senior lien position on the respective property and prohibiting Defendant from creating or accruing any debt, lien, or charge that would have priority over the Investor's promissory note.

      h.      Instead, Defendant used the same properties over and over to obtain money from certain Investors in exchange for promissory notes "secured" by mortgages that he did not record. As a result he was able to solicit and obtain investments from multiple Investors, each of whom had been led to believe he or she held the sole mortgage on a single property, when, in fact, only one or none of the Investors actually held a valid, recorded mortgage, and the properties were overleveraged, leaving nearly all Investors without true security for their investments.

*Defendant's Initials* MM

i.      Defendant provided Investors with copies of the promissory notes and mortgages on the properties that appeared to have been notarized, certifying his signature as genuine. While some signatures had in fact been notarized by Defendant's administrative assistant, Person 1, Defendant also used a digital image of a notary signature page that he had created, with Person 1's signature and notary information, purporting to acknowledge Person 1's personal witnessing of the execution of the document. However, even after Person 1 left Defendant's employment in or around February 2020, Defendant continued using Person 1's electronic signature and notary stamp to "notarize" the mortgages he provided to some Investors along with their respective promissory notes.

j.      Contrary to his representations, Defendant did not record the mortgages he issued to Investors and either failed to respond to Investor inquiries about the recording or gave Investors excuses for why their respective mortgages had not yet been recorded, such as long processing times at the clerk's office. By failing to record valid mortgages associated with the Investors' promissory notes, Defendant intentionally failed to secure the Investors' investments as he had represented, and effectively prevented Investors from finding out about one another, allowing each to believe they held first lien position, as Defendant had represented.

k.      At times, Defendant used Investors' money to perpetuate the scheme in the manner of a Ponzi scheme, using later-investing Investors' investments to pay off Investors who had invested earlier, thus perpetuating Investors' mistaken belief that their money had been profitably invested in property rehab projects, as Defendant had represented.

l.      At times, Defendant also converted Investors' money to his personal or other professional use; to run the business of Gym 1 and to fund his personal expenses and extravagant lifestyle, including to buy courtside seats at Cleveland Cavaliers home games; to

*Defendant's Initials* MM

lease, and enter into negotiations to purchase, a mansion on Lake Erie, and to purchase a wedding vow renewal ceremony package at Disney World.

        m.     Defendant communicated with Investors using interstate wire transmissions, such as emails, to falsely reassure them of the safety of their investments or to provide excuses.

        n.     As part of the scheme, Defendant through these misrepresentations induced at least approximately 63 Investors to transfer at least approximately $7.3 million to Defendant and the Motil Real Estate Companies.

### Acts in Furtherance of the Scheme to Defraud

11.     In furtherance of the scheme, and to accomplish its object and purpose, in the Northern District of Ohio, Eastern Division, and elsewhere, Defendant committed and caused to be committed the following acts, among others:

### *Wainfleet Avenue, Cleveland*

12.     On or about November 17, 2017, Defendant, via one of the Motil Real Estate Companies, purchased a two-bedroom, one-bath, 696-square-foot single-family house on Wainfleet Avenue in Cleveland, Ohio, for $35,000. At the time Defendant purchased the property, it had a tax-assessed value of $25,300.

13.     From on or about July 17, 2018, through on or about May 10, 2021, Defendant induced at least twelve different Investors to transfer a total of approximately $406,000 to the Motil Real Estate Companies in exchange for short-term promissory notes with favorable interest rates, secured by what was represented to each Investor as the sole mortgage on the Wainfleet property. Defendant used a portion of the funds transferred from the Investors to repay previous Investors, to pay interest on loans from institutional lenders, to make payments on a personal credit card, and to fund the Bank 1 account for Gym 1. Defendant did not disclose to any

*Defendant's Initials* MM

Investor that there were other mortgages on the property corresponding to promissory notes issued to other Investors and, contrary to what he led Investors to believe, did not record any of the mortgages at the time they were executed.

### *Hearthstone Road, Parma*

14.     On or about December 1, 2017, Defendant, via one of the Motil Real Estate Companies, purchased a three-bedroom, two-bath, 1296-square foot single-family house on Hearthstone Road in Parma, Ohio, for $47,000. At the time Defendant purchased the property, it had a tax-assessed value of $75,800. Defendant recorded a mortgage in connection with the purchase on or about December 1, 2017.

15.     From on or about January 30, 2019, through on or about January 27, 2021, Defendant induced at least nineteen different Investors to transfer a total of approximately $1,300,000 to the Motil Real Estate Companies in exchange for short-term promissory notes with favorable interest rates secured by what was represented to each Investor as the sole mortgage on the Hearthstone property. Defendant used a portion of the funds transferred from the Investors to repay previous Investors, to pay interest on loans from institutional lenders, to make payments on a personal credit card, and to fund the Bank 1 account for Gym 1. Defendant did not disclose to any Investor that there were other mortgages on the property corresponding to promissory notes issued to other Investors and, contrary to what he led Investors to believe, did not record any of the subsequent mortgages. A release of the initial purchase mortgage was recorded on or about August 4, 2021.

### *Leroy Avenue, Cleveland*

16.     On or about November 1, 2018, Defendant, via one of the Motil Real Estate Companies, purchased a three-bedroom, one-bath, 907-square-foot single-family house on Leroy Avenue in Cleveland, Ohio, for $60,000. At the time Defendant purchased the property, it had a

*Defendant's Initials* MM

tax-assessed value of $55,900. Defendant recorded a mortgage in connection with the purchase on or about November 1, 2018.

17.     From on or about May 1, 2019, through on or about April 8, 2021, Defendant induced at least twelve different Investors to transfer a total approximately $645,000 to the Motil Real Estate Companies in exchange for short-term promissory notes with favorable interest rates secured by what was represented to each Investor as the sole mortgage on the Leroy property. Defendant used a portion of the funds transferred from the Investors to repay previous Investors, to pay interest on loans from institutional lenders, to make payments on a personal credit card, and to fund the Bank 1 account for Gym 1. Defendant did not disclose to any Investor that there were other mortgages on the property corresponding to promissory notes issued to other Investors and, contrary to what he led Investors to believe, did not record any of the subsequent mortgages.

### *Rocky River Drive, Cleveland*

18.     In or around November 2018, Defendant solicited an Investor to invest approximately $438,000 with the Motil Real Estate Companies in exchange for an 18-month promissory note at 12% APR collateralized with a mortgage on a 28-unit apartment building on Rocky River Drive in Cleveland, Ohio.

19.     Defendant provided the Investor with a promissory note and a mortgage on the Rocky River Drive property signed and dated November 16, 2018, which Defendant, contrary to his representations, never recorded.

20.     Upon receiving the Investor's funds, Defendant used a portion of the Investor's investment to make approximately $16,000 in payments to earlier Investors; $69,000 in payments to institutional lenders; $47,000 in credit card payments; and $20,000 for other personal expenses.

*Defendant's Initials* MM

21.     Defendant then used approximately $228,000 of the funds provided by the Investor and $765,000 from an institutional lender, Institutional Lender 1, to purchase the Rocky River Drive property for $993,000 on or about December 12, 2018. At the time of the transfer, the tax valuation of the property was $890,000.

22.     Defendant executed a mortgage with Institutional Lender 1 on or about December 12, 2018, despite executing a mortgage with the Investor a month earlier. Defendant did not advise Institutional Lender 1 of the Investor's prior unrecorded mortgage. Institutional Lender 1's mortgage was recorded on or about December 12, 2018.

23.     From on or about May 1, 2019, through on or about May 25, 2020, Defendant induced at least eight additional Investors to transfer approximately $2,036,000 to the Motil Real Estate Companies in exchange for short-term promissory notes with favorable interest rates secured by what was represented to each Investor as the sole mortgage on the Rocky River Drive property. Defendant used a portion of the funds transferred from the Investors to repay previous Investors and to pay interest on loans from institutional lenders. Defendant did not disclose to all Investors that the institutional lender already held a mortgage on the property and did not disclose that there were other mortgages on the property corresponding to promissory notes issued to other Investors. Defendant did not record any of the mortgages associated with the Investors' investments.

### *Multi-Parcel Purchase 1 (Richland County Purchase)*

24.     On or about March 22, 2019, Defendant, via one of the Motil Real Estate Companies, made a multi-parcel purchase consisting of 23 properties in Richland County, Ohio ("the Richland County Purchase"), for a total price of $500,322, using a combination of funds from Institutional Lender 1 and from an initial Investor.

*Defendant's Initials* MM

25.     Defendant executed a mortgage for the Richland County Purchase to the initial

Investor on or about February 18, 2019, but did not record the mortgage at that time.  Defendant

executed a mortgage for the Richland County Purchase to Institutional Lender 1 on or about

March 22, 2019.  Institutional Lender 1's mortgage was recorded on or about March 27, 2019.

The initial Investor's mortgage was not recorded until May 24, 2019.

26.     From on or about April 1, 2019, through on or about September 22, 2020,

Defendant induced at least twenty different Investors to transfer approximately $1,141,000.00 to

him in exchange for short-term promissory notes with favorable interest rates secured by what

was represented to each Investor as the sole mortgage on one or more of the properties in the

Richland County Purchase.  Defendant used approximately $700,000 of the funds obtained from

Investors to repay and release the initial Investor. The satisfaction of the initial Investor's

mortgage was recorded on or about December 4, 2020.  Defendant also used a portion of the

funds transferred from Investors to repay previous Investors, to pay interest on loans from

institutional lenders, to make payments on a personal credit card, and to fund the Bank 1 account

for Gym 1. Defendant did not disclose to any Investor that Institutional Lender 1 already held a

mortgage on the property and did not disclose that there were other mortgages on the property

corresponding to promissory notes issued to other Investors.  Defendant did not record any of the

mortgages associated with the subsequent Investors' investments.

### Multi-Parcel Purchase 2 (Multi-County Purchase)

27.     On or about March 22, 2019 (the same day that Defendant completed the

Richland County Purchase), Defendant, via one of the Motil Real Estate Companies, made a

multi-parcel purchase consisting of 29 properties in Richland County, Ohio; eight properties in

Marion County, Ohio; six properties in Crawford County, Ohio; and one property in Hardin

*Defendant's Initials* MM

County, Ohio ("the Multi-County Purchase"), for a total price of $500,322 (identical to the price of the Richland County Purchase), using funds from Institutional Lender 1.

28.      Defendant executed a mortgage for the Multi-County Purchase with Institutional Lender 1 on or about March 22, 2019. Institutional Lender 1's mortgage was recorded on or about March 27, 2019.

29.      From on or about November 25, 2019, through on or about July 1, 2020, Defendant induced at least twelve different Investors to transfer approximately $943,000 to him in exchange for short-term promissory notes with favorable interest rates secured by what was represented to each Investor as the sole mortgage on one or more of the properties in the Multi-County Purchase. Defendant used a portion of the funds transferred from Investors to repay previous Investors, to pay interest on loans from institutional lenders, and to fund the Bank 1 account for Gym 1. Defendant did not disclose to any Investor that Institutional Lender 1 already held a mortgage on the property and did not disclose the existence of other mortgages on the property corresponding to promissory notes issued to other Investors. Defendant did not record any of the mortgages associated with the Investors' investments.

### *West 50th Street, Cleveland*

30.      On or about September 13, 2019, Defendant, via one of the Motil Real Estate Companies, purchased a four-bedroom, one-bath, 1,207-square-foot single-family house on West 50th Street in Cleveland, Ohio, for $30,000. At the time Defendant purchased the property, it had a tax-assessed value of $19,400.

31.      From on or about September 5, 2019, through on or about January 5, 2021, Defendant induced at least six different Investors to transfer a total of approximately $205,000 to him in exchange for promissory notes secured by what was represented to each Investor as the sole mortgage on the West 50th Street property. Defendant used a portion of the funds

*Defendant's Initials* **MM**

transferred from the Investors to repay previous Investors, to pay interest on loans from institutional lenders, and to fund the Bank 1 account for Gym 1. Defendant did not disclose to any Investor that there were other mortgages on the property corresponding to promissory notes issued to other Investors and did not record any of the mortgages.

32.   Defendant sold the property on April 22, 2021, for $32,000.

### March 2021 Email

33.   On or about March 22, 2021, Defendant sent an email with the subject line "Investor Update – March 2021" to the Investors, which included the representation that he had enlisted a number of realtors to list and sell all but three of the properties owned by the Motil Real Estate Companies in order to repay all Investors.

34.   Despite this, from between on or about March 23, 2021, through May 18, 2021, Defendant successfully solicited at least another four Investors to invest as "first lienholders" on the already-overleveraged Wainfleet and Leroy Properties.

### Securities Fraud (Count 1)

35.   From in or around October 2017 through on or about March 7, 2022, in the Northern District of Ohio, Eastern Division, and elsewhere, Defendant MATTHEW MOTIL did knowingly and willfully, in connection with the purchase and sale of securities, and through means and instrumentalities of interstate commerce and the mails, directly and indirectly use and employ manipulative and deceptive devices and contrivances, by: (1) employing a device, scheme and artifice to defraud; (2) making and causing to be made untrue statements of material fact and omitting to state material facts necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; and (3) engaging in an act, practice and course of business which operated as a fraud or deceit upon the Investors, as

*Defendant's Initials  MM*

described above, all in violation of Title 15, United States Code, Sections 78j(b) and 78ff, and

Title 17, Code of Federal Regulations, Section 240.10b-5.

Wire Fraud (Count 2)

36.　　From in or around October 2017 through on or about March 7, 2022, in the

Northern District of Ohio, Eastern Division, and elsewhere, Defendant MATTHEW MOTIL

knowingly devised and intended to devise a scheme and artifice to defraud and obtain money

from the Investors by means of materially false and fraudulent pretenses, representations, and

promises, as described above, all in violation of Title 18, United States Code, Section 1343.

37.　　On or about March 22, 2021, in the Northern District of Ohio, Eastern Division,

Defendant, for the purpose of executing and attempting to execute the foregoing scheme and

artifice, transmitted and caused to be transmitted by means of wire communication in interstate

commerce, writings, signs, signals, pictures, and sounds by means of wire and radio

communication, to wit: email communication, routed across state lines, from Defendant to

Investors with the subject line "Investor Update – March 2021," sent from Defendant's

matt@mariepaul.com email address to Investors in the Northern District of Ohio and elsewhere,

seeking to induce additional financial contributions, conceal the nature of the scheme, and lull

the Investors into a false sense of security about the financial soundness of the Motil Real Estate

Companies.

*Defendant's Initials* __MM__